UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JENNIFER CAMPINELL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:25-cv-00072-LEW |
| | ) | |
| ABBOTT LABORATORIES, INC., | ) | |
| | ) | |
| Defendant | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER**

Plaintiff Jennifer Campinell filed this lawsuit against Defendant Abbott Laboratories, Inc. ("Abbott") asserting claims of disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), the Maine Human Rights Act ("MHRA"), and the Maine Whistleblower Protection Act ("MWPA"). Before the Court is Defendant's Motion to Dismiss or, in the Alternative, to Transfer (ECF No. 8). For the reasons below, the Motion is granted in part and denied in part.

BACKGROUND

Plaintiff Jennifer Campinell started working for Abbott as a Quality Assurance Engineer at Abbott's Scarborough, Maine, campus in May 2020. Compl. ¶¶ 3-4 (ECF No. 1). She suffers from anxiety and depression, and alleges that Abbott discriminated against her by refusing to provide reasonable accommodations for her disabilities and by taking adverse action against her in retaliation for the exercise of her rights, in violation of the ADA and MHRA. *See* Compl. ¶¶ 59-74. Separately, she also alleges that Defendant

violated her rights under the MWPA by taking adverse action against her in retaliation for her engagement in protected activity. *See* Compl. ¶¶ 75-80.

The Defendant does not seek dismissal based on the insufficiency of the factual or legal allegations of the Complaint, but instead argues that, because of the forum selection clause in the Plaintiff's Employee Agreement with Abbott, she was required to bring this case in Illinois. The contract states:

> The parties agree to the exclusive jurisdiction of the state and federal courts in Illinois, in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby, and further irrevocably agree that all claims in any such action or proceeding shall be heard and determined in Lake County, Illinois state court or the Northern District of Illinois federal court.

Employee Agmt., Def. Ex. 1 § 16(a) (ECF No. 8-1). The Agreement further provides that it "shall be construed, and its enforceability and the relationship of the parties shall be determined, in all respect under the laws of Illinois, without giving effect to conflict of laws." *Id*. § 15. The Defendant argues that, applying the forum-selection clause, the Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014) ("In this Circuit, we treat a motion to dismiss based on a forum-selection clause as a motion alleging failure to state a claim for which relief can be granted under Rule 12(b)(6).") (cleaned up). In the alternative, the Defendant asks for the case to be transferred to the Northern District of Illinois under 28 U.S.C. § 1404(a).

Separately, with respect to Count IV of the Complaint (alleging violations of the MWPA), the Defendant argues first, that the forum-selection clause bars the Plaintiff from bringing claims "relating to her employment with Abbott" under Maine law; and second,

that applying Maine law, Plaintiff has not alleged a plausible claim for relief under the MWPA.

## DISCUSSION

### A.  Plaintiff's MWPA Claim (Count IV)

Plaintiff has advised that she "does not oppose Defendant's Motion regarding the [M]WPA claim." Pl. Resp. at 7 (ECF No. 15). Defendant requests for the first time in its reply brief that such dismissal be with prejudice. *See* Def. Reply at 1 (ECF No. 16). Because I construe Plaintiff's non-opposition as a voluntary dismissal of the MWPA claim, Count IV is dismissed without prejudice. *See* Fed. R. Civ. P. 41(a).

### B. Plaintiff's Remaining Claims (Counts I, II, and III)

"Although Rule 12(b)(6) remains a proper vehicle to seek enforcement of a forum selection clause in this Circuit, a district court should 'ordinarily' use § 1404(a) to enforce a forum-selection clause that identifies a federal forum[.]" *Reynoso v. LaserShip, Inc.*, 322 F. Supp. 3d 211, 215 (D. Mass. 2018) (quoting *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W.D. of Tex.*, 571 U.S. 49, 62 (2013)). Heeding this admonition, I will take the Defendant up on its offer to construe the instant Motion as a request to transfer this case to the Northern District of Illinois under 28 U.S.C. § 1404(a).[1] That provision

---

[1] This decision is separately informed by my reservations about the propriety of considering the Employee Agreement in the context of a motion to dismiss. Ordinarily, a court's review of a motion to dismiss under Rule 12(b)(6) is limited to the complaint itself. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). However, "[w]hen the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Alternative Energy*, 267 F.3d at 33; *see also Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228

allows for the transfer of any civil action "to any other district or division where it might have been brought or to any district or division to which the parties have consented" "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" and deny a motion to transfer only "under extraordinary circumstances unrelated to the convenience of the parties." *Atlantic Marine*, 571 U.S. at 62.

Opposing transfer, the Plaintiff contends that there is no "valid forum-selection clause" here because the Employee Agreement is not an enforceable contract. Specifically,

---

F.3d 24, 32 (1st Cir. 2000) (documents "integral to or explicitly relied upon in the complaint" are properly considered) (cleaned up).

The Defendant invokes this "narrow exception," *Alternative Energy*, 267 F.3d at 33, arguing that the Employee Agreement has been fairly incorporated into the Complaint. But the Agreement is not mentioned once in the Complaint, and the rights and protections that the Plaintiff seeks to vindicate through this lawsuit are afforded to her by statute, not by the Employee Agreement. *See Estate of Rahim v. United States*, No. 1:18-cv-11152-IT, 2020 WL 2308728, at 1 (D. Mass. May 8, 2020) (document must be "'integral to' the claim or 'explicitly relied upon as a basis for liability'" to be considered incorporated into the pleadings). The Defendant asserts that its "'liability largely depends upon the interpretation of and application of' the choice of law provision," without explaining why the choice of venue between the Northern District of Illinois or the District of Maine has any bearing on its underlying liability. Def. Mot. at 5 (quoting *New England Surfaces v. E.I. Du Pont De Nemours & Co.*, 460 F. Supp. 2d 153, 157 (D. Me. 2006)).

In these respects, then, this situation strikes me as different from that presented in those cases where courts have determined that contracts between the parties were fairly incorporated into the pleadings—where the contract in question was both referred to in the complaint and central to either the plaintiff's claim for relief or the defendant's liability on the merits. *See, e.g., Alternative Energy*, 267 F.3d at 34 (consideration of an earlier settlement agreement was appropriate because the complaint "refers to the 1998 Settlement Agreement or its terms numerous times" and the "appellee's alleged liability under the complaint depends directly upon whether [certain] claims are interpreted to have been released under the 1998 Settlement Agreement"); *New England Surfaces*, 460 F. Supp. 2d at 157 (contract was fairly incorporated because the complaint "refers to the Distribution Agreement or its terms numerous times, and several of Plaintiff's claims [including a claim for breach of contract] rest on the Distribution Agreement").

the Plaintiff points to section 19 of the Agreement, which gives Abbott "the right to waive enforcement" or "modify, change, clarify or interpret the Agreement in its sole discretion," Def. Ex. 1 § 19, and argues that as a result of this provision, the contract is not supported by consideration and therefore unenforceable under Maine law. *See Canales v. Univ. of Phoenix*, 854 F. Supp. 2d 119, 124-25 (D. Me. 2012) ("[W]here the employer reserves the right to make unilateral changes in an employee contract without giving the employee an opportunity to decide whether to accept those new terms by continuing employment, courts have generally concluded that the incorporated arbitration agreement is illusory and unenforceable."); *Snow v. BE & K Const. Co.*, 126 F. Supp. 2d 5, 13-15 (D. Me. 2001) (rejecting employer's attempt "to bind its employees to the terms" of an employee handbook, "while carving out an escape route that would enable the company to avoid the terms" if they "no longer served its interests"). The Defendant contends that the Plaintiff's reading of this language takes it out of context. Because both Plaintiff and Defendant have argued this issue with reference to Maine law, with the Defendant declining to challenge the Plaintiff's choice-of-law assumptions in its Reply, I do not question the parties' apparent agreement that Maine law governs this issue.

Under Maine law, a court "interpreting a contract . . . needs to look at the whole instrument" and consider "[a]ll parts and clauses . . . together [so] that it may be seen if and how one clause is explained, modified, limited or controlled by the others." *Alrig USA Acquisitions LLC v. MBD Realty LLC*, 331 A.3d 372, 377 (Me. 2025) (citation omitted); *see also In re Estate of Barrows*, 945 A.2d 1217, 1221 (Me. 2008) ("[W]e do not pluck isolated words or phrases from the agreement and examine them alone; the meaning of

different contract provisions must still be read in light of the contract as a whole."); *accord Amyndas Pharm., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 31 (1st Cir. 2022) (applying "federal common law and general contract-law principles" to observe that "an inquiring court must avoid tunnel vision" and "consider contractual provisions within the context of the contract as a whole" "instead of focusing myopically on individual words"). Section 19 of the Employee Agreement reads in full:

> **Waiver.** The failure or refusal by ABBOTT either to insist upon the strict performance of any provision of this Agreement or to exercise any right in any one or more instances or circumstances shall not be construed as a waiver or relinquishment of such provision or right, nor shall such failure or refusal be deemed a custom or practice contrary to such provision or right of this agreement. ABBOTT has the right to waive the enforcement of any provision(s) in this Agreement, as well as modify, change, clarify or interpret the Agreement in its sole discretion but such waiver must be in writing and signed by an ABBOTT Corporate Officer or his/her delegate to be valid.

Def. Ex. 1 § 19. In context, the reservation of the right to "modify" or "change" the Agreement concerns Abbott's ability to waive the Plaintiff's performance. This provision does not appear to reserve to Abbott a right to "suddenly change the terms of the agreement" to avoid its own performance or impose new obligations on the employee in a way that would make the entire agreement "illusory from the outset." *Canales*, 854 F. Supp. 2d at 124 (quoting *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)). And even if this provision did empower Abbott to unilaterally add terms to the Agreement, it does not appear that this power would be "*unlimited*."[2] *Millien v. Colby*

---

[2] Indeed, reading section 19 to confer such unfettered power of unilateral modification would appear to be inconsistent with the rule that "a standard-form, printed contract," delivered to a party "on a 'take it or leave it' basis"—as the Plaintiff appears to contend this agreement is, *see* Pl. Resp. at 3—will be "construed to meet the reasonable expectations of the party in the inferior bargaining position." *Dairy Farm Leasing Co. v. Hartley*, 395 A.2d 1135, 1139 n.3 (Me. 1978); *see also*

6

*College*, 874 A.2d 397, 402 (Me. 2005) (internal citation omitted).  Any modification under this provision must relate to Abbott's "waiv[ing] the enforcement of" a particular aspect of the employee's performance and must be set out in a signed writing, *see* Def. Ex. 1 § 19, which, presumably, the employee could then accept (by continuing to work) or reject (by leaving her position).  Such modification would not render an agreement illusory.  *See Cochran v. Quest Software*, 328 F.3d 1, 10 (1st Cir. 2003) (Under Massachusetts law, an employer's "forbearance from ending the employment relationship, coupled with the employee's continued performance" are adequate consideration to support modification of "an at-will employment contract"); *Carroll v. Stryker Corp.*, 658 F.3d 675, 683 (7th Cir. 2011) (Under Wisconsin law, an employer's "reservation of the right to modify" did not make a contract illusory where the employee "would have had an opportunity to accept the new terms by continuing to work for the company").

Separately, the Plaintiff contends that the Agreement is invalid because it is unsigned, and "[w]ithout a signature, there is no contract."  Pl. Resp. at 3.  But "[t]he law does not require that an agreement be signed in order for contracting parties to be bound." *N. Me. Transp., LLC v. OneBeacon Am. Ins. Co.*, 820 F. Supp. 2d 139, 145 (D. Me. 2011).  Rather, "[p]arties become contractually bound when they mutually assent to be bound."

---

*Stenzel v. Dell, Inc.*, 870 A.2d 133, 142-43 (Me. 2005) (applying both Maine and Texas law to decline to conclude that a contract was rendered illusory by its "reservation clause," because "the reservation clause must be construed against Dell and in favor of its customers by restricting Dell's right to modify the terms of the agreement as to future purchases only").  Furthermore, to the extent some cases have landed on the omission of an advance notice provision as dispositive, *e.g.*, *Canales*, 854 F. Supp. 2d at 124, "[i]n general, the law will supply a reasonable term when there is a contract that omits a term essential to the determination of the parties' rights and responsibilities." *Fitzpatrick v. Teleflex, Inc.*, 763 F. Supp. 2d 224, 235 (D. Me. 2011) (citing Restatement (Second) of Contracts § 204).

*Id*.  The Plaintiff assented to the Employee Agreement electronically, by checking a box.[3] *See* Def. Ex. 1, p. 11; Decl. of Erika Douglass ¶¶ 5-7 (ECF No. 16-1).  It does not appear that she contends otherwise.  *See* Pl. Resp. at 3.  The Plaintiff is therefore bound by the terms to which she agreed.

Unpersuaded by the Plaintiff's challenges to the validity of the contract so far, I turn now to the forum-selection clause.  The First Circuit has outlined a three-step inquiry to aid District Courts in determining the applicability and enforceability of a forum-selection clause, which requires me to consider: (1) whether the clause is permissive or mandatory, (2) whether the Plaintiff's claims fall within the scope of the forum-selection clause, and (3) whether the presumption that the clause is enforceable should apply.[4] *See Claudio-De Leon*, 775 F.3d at 46-49.  As the resisting party, the Plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine*, 571 U.S. at 63-64; *Claudio-De Leon*, 775 F.3d at 48.

---

[3] As the Plaintiff points out, Abbott's records indicate that she electronically "signed" the Agreement several months after her start date. *See* Pl. Resp. at 3. The Plaintiff does not explain, however, why the delay matters to the question of whether the Agreement (including its forum-selection clause) is valid and enforceable, and I will not "do counsel's work" by investigating that possibility further. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

[4] Again, neither party has explicitly addressed the question of what body of law should govern this analysis or why.  The parties appear to proceed under the assumption that federal common law, as ascertained by the First Circuit, governs my construction of the forum-selection clause.  I see no reason to challenge that assumption, notwithstanding the Employee Agreement's choice-of-law provision. *See Amyndas Pharm.*, 48 F.4th at 30-31 (1st Cir. 2022) (applying federal common law and general contracts principles because "[w]here, as here, a federal court is asked to enforce a forum-selection clause, federal common law supplies the rules of decision," and "[n]otwithstanding the choice-of-law clause contained in [the agreement], the parties have agreed that federal common law and general contract-law principles control").

The Plaintiff does not contest the Defendant's claim that the forum-selection clause is mandatory. After all, the clause plainly states that the parties agreed "to the *exclusive* jurisdiction of the state and federal courts in Illinois" and "that all claims . . . *shall* be heard and determined in . . . the Northern District of Illinois federal court," Def. Ex. 1 § 16(a) (emphasis added). *See Claudio-De Leon*, 775 F.3d at 46 (forum-selection clause was "no doubt" mandatory because "it is axiomatic that the word 'shall' has a mandatory connotation"). Nor does the Plaintiff meaningfully counter the Defendant's argument that her claims "aris[e] out of or relat[e] to [the Employee Agreement] or the transactions contemplated hereby," Def. Ex. 1 § 16(a), bringing her case within the scope of the forum-selection clause. Instead, the Plaintiff focuses on the third prong, arguing that the forum-selection clause should not be enforced. *See* Pl. Resp. at 3-5.

"A forum selection clause is 'prima facie valid' and, absent a 'strong showing' by the resisting party that the clause is 'unreasonable under the circumstances,' it should not be set aside." *Claudio-De Leon*, 775 F.3d at 48 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972)). It is nonetheless appropriate to decline to enforce a forum-selection clause where (1) it is the product of "fraud or overreaching," (2) its enforcement "would be unreasonable and unjust," (3) transfer would "contravene a strong public policy of the forum in which suit is brought," or (4) proceeding in the transferee forum would be "so gravely difficult and inconvenient" that the resisting party would "for all practical purposes be deprived of his day in court." *Amyndas Pharm.*, 48 F.4th at 33.

First, the Plaintiff contends that the forum-selection clause should not be enforced because it is "part of an adhesion contract, drafted solely by Abbott," and not subject to

9

further negotiation—as such, she argues, the clause is "subject to heightened scrutiny."[5] Pl. Resp. at 3. But this does not amount to "fraud or overreaching," and courts regularly enforce forum-selection clauses derived from similarly unbalanced bargaining processes, without applying anything that can be described as "heightened scrutiny." *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) (rejecting the "determination that a nonnegotiated forum selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining"); *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 18-19 (1st Cir. 2009) (enforcing a forum-selection clause in a medical consent form because "[a]bsent a finding of procedural or substantive unconscionability, courts have repeatedly enforced forum selection clauses and arbitration agreements found in consent forms and similar documents" and "[t]he mere fact that a contract is one of adhesion does not render it per se unenforceable"); *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 389 (1st Cir. 2001) (enforcing a forum-selection clause in an employment contract, even though it was "a 'boilerplate' provision" not subject to bargaining and the employer had "overwhelming bargaining power and influence" during the hiring process).

The Plaintiff also argues that the clause should not be enforced because doing so would deprive her of her "home forum" in Maine, burdening her "practical[ly] and financial[ly]." Pl. Resp. at 3. While I am sympathetic to the cost and inconvenience to the Plaintiff that the prospect of litigating this case in Illinois poses, my consideration of that burden is limited. *See Atlantic Marine*, 571 U.S. at 63-64 (holding that a court considering

---

[5] The Plaintiff does not provide any authority to support this claim of entitlement to "heightened scrutiny," nor any further elaboration of what "heightened scrutiny" would entail in this context.

a § 1404(a) motion to enforce a forum-selection clause "should not consider arguments about the parties' private interests"). And the Plaintiff does not claim that the burdens of proceeding in Illinois would "for all practical purposes" deprive her of her "day in court." *Amyndas Pharm.*, 48 F.4th at 33.

Third, the Plaintiff contends that enforcing the forum-selection clause "would contravene a strong public policy of the ADA," as embodied in its special venue provision, which "expressly protects a plaintiff's right to bring suit in the judicial district where the alleged unlawful employment practice occurred." Pl. Resp. at 4. The ADA incorporates the special venue provision from Title VII of the Civil Rights Act, *see* 42 U.S.C. §§ 12117(a), which provides:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction over actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

42 U.S.C. § 2000e-5(f)(3). Courts that have considered the question of whether this venue provision renders forum-selection clauses unenforceable in ADA and Title VII actions have reached divergent conclusions. *Compare Martinez v. Bloomberg LP*, 740 F.3d 211, 228-29 (2d Cir. 2014) (enforcing a forum-selection clause in an ADA action, despite the special venue provision and "the Act's identification of a strong federal interest in

combatting discrimination based on disability"), *Haywood v. ComTec Inf. Sys.*, No. 25-cv-7883, 2025 WL 2930752, at *3-4 (N.D. Ill. Oct. 15, 2025) (similar), *Kessler v. Direct Consulting Assoc. LLC*, No. 17-11943, 2018 WL 7890862, at *4-9, (E.D. Mich. July 6, 2018) (similar), *Putnam v. Perficient, Inc.*, No. 4:21-cv-00739, 2022 WL 4480329, at *3-4 (E.D. Tex. July 20, 2022), *report and recommendation adopted*, 2022 WL 4474901 (E.D. Tex. Sep. 26, 2022), *with Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 959-61 (M.D. Tenn. 2008) (holding that a forum-selection was "unenforceable based on the forum provision contained in 42 U.S.C. § 2000e-5(f)(3), which embodies a public policy determination that Title VII plaintiffs should have a choice of where to bring suit") *and Thomas v. Rehab. Serv. of Columbus, Inc.*, 45 F. Supp. 2d 1375, 1380-81 (M.D. Ga. 1999) (similar). It appears that the First Circuit has not yet weighed in, although it has upheld the enforcement of forum-selection clauses in other Title VII actions. *See, e.g., Claudio-De Leon*, 775 F.3d at 45 (enforcing forum selection clause in a case involving "Title VII pregnancy and sex discrimination claims").

In the absence of controlling authority, the Plaintiff points to *Dumont v. PepsiCo, Inc.*, where Judge Torresen declined to enforce a forum-selection clause because of a similar venue provision in the Employee Retirement Income Security Act (ERISA), to further a policy of providing "ready access to the Federal Courts."[6] *See* 192 F. Supp. 3d

---

[6] Although ERISA and Title VII are different statutes with different objectives, their venue provisions are similar, as courts dealing with the enforcement of forum-selection clauses in Title VII cases have recognized. *See, e.g., Kessler*, 2018 WL 7890862, at *8-9; *Haywood* at *4; *Dey v. Innodata Inc.*, No. 17-c-5528, 2018 WL 497283 at *4 (N.D. Ill. Aug. 7, 2019). That said, the Plaintiff's contention that *Dumont* is "controlling authority" and "directly on-point" overstates things. Pl. Resp. at 6. ERISA and the ADA may have similar venue provisions, but they are still different statutes. And while the decisions of other district judges can be (and often are)

209, 216-23, 218 (D. Me. 2016) (quoting 29 U.S.C. § 1001(b)). As an initial matter, it appears to me that *Dumont* does not represent the majority view on the enforceability of forum-selection clauses in the face the ERISA and Title VII special venue provisions.[7] *See In re Becker,* 993 F.3d 731, 732-33 (9th Cir. 2021) ("Courts are in near universal agreement: ERISA does not bar forum selection clauses."); *In re Mathias*, 867 F.3d 727, 731-34 (7th Cir. 2017) (forum-selection clauses enforceable in ERISA cases); *Smith v. Aegon Co. Pension Plan*, 769 F.3d 922, 930-33 (6th Cir. 2014) (forum-selection clauses enforceable in ERISA cases); *Martinez*, 740 F.3d at 228-29 (2d Cir. 2014) (forum-selection clauses enforceable in ADA cases). Moreover, the Court in *Dumont* emphasized the importance of ERISA's declared policy of "providing for . . . *ready access to the Federal Courts*," which the Court determined would be undermined by forcing plaintiffs to litigate in faraway districts. *See* 192 F. Supp. 3d at 218 (quoting 29 U.S.C. § 1001(b)). The "ready access" language that provides an additional reason to prioritize an ERISA plaintiff's home forum over other federal fora is missing from the ADA.

I accept that the ADA stands for "a strong federal interest in combatting discrimination based on disability" and "a broader federal policy of ensuring access to a

---

persuasive, "[t]he decisions of federal district court judges are not binding precedent for other federal district court judges within that district." *Dumont v. PepsiCo, Inc.*, 192 F. Supp. 3d 209, 221 (D. Me. 2016). "Binding authority comes from [this] district's court of appeals and the United States Supreme Court." *Id*.

[7] Indeed, the *Dumont* Court itself appears to have acknowledged as much. *See Dumont*, 192 F. Supp. 3d at 212-13 (recognizing that the Sixth Circuit had held "that forum selection clauses are enforceable in ERISA-governed plans," citing *Smith*, 769 F.3d at 932-33, and that "[t]he majority of district courts to address the issue have likewise held that forum selection clauses are permissible in the ERISA plan context").

federal forum," as reflected in the special venue provision. *Martinez*, 740 F.3d at 211. But it is not clear to me that these policy considerations would necessitate prioritizing the Plaintiff's selection over the federal venue appointed by the forum-selection clause, particularly where the contractual forum is itself a proper venue under the statute.[8] Even if an ADA plaintiff's choice is entitled to "more deference . . . it clearly cannot be dispositive," or "Congress would have had no need to specifically mention Sections 1404(a) and 1406 in Section 2000e-5(f)(3)." *Van Cleave v. Univ. of the South*, 607 F. Supp. 3d 783, 789 (M.D. Tenn. 2022). I do not see how a transfer to a district where the case could have been brought contravenes the public policy the Plaintiff claims is embodied in the ADA's venue provision. These policy considerations could make enforcement of a forum-selection clause "a close question" in some cases, but not in this one. *See, e.g.*, *Martinez*, 740 F.3d at 211 (enforcing forum-selection clause designating the United Kingdom as the proper forum in an ADA action).

Moreover, "[t]he presumptive enforceability of forum selection clauses reflects a strong federal policy of its own." *Martinez*, 740 F.3d at 218. As other courts have recognized, it is "difficult to reconcile" the proposition that forum-selection clauses are unenforceable in all ADA actions because of "the public policy concerns reflected in the statute's venue provision," with the Supreme Court's admonition in *Atlantic Marine* that

---

[8] The Northern District of Illinois, as "the judicial district in which the employment records . . . are maintained and administered," is itself one of the three statutorily preferred venues for this case. *See* 42 U.S.C. § 2000e-5(f)(3).

"forum-selection clauses should control except in unusual cases." *Kessler*, 2018 WL 7890862, at *7 (quoting *Atlantic Marine*, 571 U.S. at 64).

Finally, I consider whether public interest considerations counsel against or in favor of transfer. These include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law."[9] *Atlantic Marine*, 571 U.S. at 62 n.6. However, "those factors will rarely defeat a transfer motion." *Id*. at 64. The parties do not appear to dispute that the District of Maine and Northern District of Illinois are similarly congested, so I conclude that this first factor is neutral. I agree with Plaintiff that the second factor weighs against transfer, because this dispute involves events and conduct occurring in a Maine workplace, and "implicates Maine's interest in protecting its workers." Pl. Resp. at 6. Finally, the Plaintiff brings claims under the MHRA, and "the District of Maine is more familiar with Maine law and in a better position to apply it." *Johnson v. VCG Holding Corp.*, 767 F. Supp. 2d 208, 217 (D. Me. 2011). This factor therefore weighs against transfer, but only slightly: other districts—including the Northern District of Illinois—are "undoubtedly capable of applying Maine law." *Id*. While two of these factors therefore weigh against transfer, neither does so forcefully enough to overcome the presumption embodied in the admonition that although "it is conceivable in a particular case that the district court would refuse to transfer a case

---

[9] The Plaintiff also points to the convenience of witnesses (as the parties appear to expect that most will be Maine residents), but this is a private interest factor, which I have been directed not to consider. *See Atlantic Marine*, 571 U.S. at 62 n.6, 64.

notwithstanding the counterweight of a forum-selection clause, such cases will not be common." *Atlantic Marine*, 571 U.S. at 64 (cleaned up).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or, in the Alternative, to Transfer (ECF No. 8) is GRANTED IN PART and DENIED IN PART. Count IV of the Complaint is DISMISSED without prejudice. This case will be TRANSFERRED to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404.

SO ORDERED.

Dated this 6th day of February, 2026.

/S/ Lance E. Walker
Chief U.S. District Judge